### INDEPENDENT EXPLORATION CO. v. CAMPBELL.

#### No. 7862.

Circuit Court of Appeals, Seventh Circuit.

May 2, 1942.

John M. Tuohy and Joseph T. Zoline, both of Chicago, Ill., (Ryan, Condon & Livingston, of Chicago, Ill., of counsel), for appellant.

Bruce E. Brown, of Chicago, Ill. (Henry T. Martin and Frederic Ullmann, both of Chicago, Ill., of counsel), for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, a corporation organized under the laws of the State of Texas, sued the defendant to recover for services performed. The verdict for plaintiff was $5475.18, upon which the District Court entered judgment, and defendant appealed.

On March 9, 1940, the parties entered into a written contract in and by which plaintiff agreed to make a seismographic survey of the subsurface geological structure of certain lands in the State of Texas. The agreement provided that plaintiff "binds and obligates itself to make searches and survey of such areas as Client [defendant] may designate for the purpose of determining the character of the subsurface structure for the benefit of client" by the use of certain geophysical instruments. For the services rendered, defendant agreed to pay on a sliding scale of fees for each working day, beginning upon the arrival of plaintiff's outfit at Houston, Texas, and continuing until 24 hours after receipt of a written notice to terminate the work. To secure the payments to become due for the five days then contemplated, the defendant deposited $2100 with a bank at Houston, Texas, and agreed that if operations continued beyond five days, to deposit at the end of each five. day period an additional $1800.

At the time of the execution of the contract, the defendant informed A. L. Smith, plaintiff's vice-president, that he was leaving Houston and that one Robert Sowder would look after his interest; "that plaintiff was to report to Sowder the results of its finding from day to day and be advised by Sowder as to the progress of the work." Defendant then left Houston and there was no further contact between the plaintiff and the defendant until after the work had been completed.

Plaintiff commenced and continued the surveys until April 6, 1940. There is no question that the surveys were made in an area north of Cedar Point extending toward Goose Creek field and that they included certain leaseholds held by the defendant. There is a dispute, however, as to what areas were designated.

On March 8, 1940, Smith had a conversation with the defendant concerning the area in which the exploration was to be made. Smith testified that after the defendant had acquainted him (Smith) with the fact that the defendant owned leases on land in which he hoped he might find oil, defendant designated the areas to be surveyed as "north of Cedar Point, covering the leases and extending toward Goose Creek field."

The defendant admitted the conversation, and testified that after he had indicated upon a map the leaseholds in which he was interested, he inquired whether there was any possibility of having adequate information from a geophysical survey on the particular leaseholds that would establish their worth during the four or five days remaining between March 8 and the date upon which rentals would become due, and that Smith assured him that five days' work would establish whether the rentals should be paid. On cross-examination the defendant testified that the territory in which plaintiff planned to do the work "was somewhere between the location of the well and the oil field of Goose Creek" and "run up toward Goose Creek."

The record further discloses that on April 9, 1940, Smith and the defendant had a conference at which Smith explained and delivered to the defendant a map showing the results of the survey and a bill for $7875.18 for 24 operating days. Thereupon the defendant addressed a letter to the bank at Houston, directing the bank to pay to the plaintiff the $2100 held in escrow.

On May 22, 1940, Smith addressed a letter to the defendant in which he stated: "I realize from discussions with Mr. Sowder that he is endeavoring to close a deal which will cover the cost of the work. However, whether such a deal is consummated or not, we must look to you for our remuneration under the contract."

On June 4, Smith wrote defendant: "I have just received a letter from Mr. Sowder saying that he has closed a deal with the British American Oil Producing Company on the Cedar Point work. We presume that this is in accordance with your instruction but we would like to have your written confirmation authorizing us to turn the data over to them."

On June 6, defendant replied thus:

"This letter will be your authorization to turn over the data discussed in your letter of June 4, 1940 to the British American Oil Company.

"It is my personal opinion, and Bob Sowder informs me that you concur therein, that they are the proper type of company to develop and to complete the Cedar Point picture.

"It is further my understanding that Mr. Sowder has made arrangements with you for personal payment by him of the balance due on the shooting picture.

"I thank you for your entire cooperation and your very kind offices in regard to this matter."

There is no claim that defendant had given notice to plaintiff at any time terminating the work, but the defendant contends that the plaintiff was authorized to make a survey only of the leasehold area, and that all the work that was done, except for the first five days' work, was beyond the leased area.

That there is a dispute in the evidence as to the area actually designated by the defendant is admitted. Under the circumstances the only question is whether there is evidence sufficient to sustain the verdict. In considering the question we are bound to adopt the facts and all favorable inferences reasonably drawn therefrom in the light most favorable to the plaintiff. So viewed, it is clear that the jury was warranted in the conclusion that the work was done under the terms of the contract and included not only the leaseholds, but embraced the area designated by the defendant north of Cedar Point up toward Goose Creek, and the question being one of fact for the jury, their determination in favor of the plaintiff is binding upon us.

The judgment of the District Court will be affirmed.